| | |
|---|---|
| GREGORY BAUGHMAN, )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-15, -20] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Gregory Baughman ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. Claimant filed a response in opposition [DE-22] to the Commissioner's motion, supported by a notice of new approval [DE-23], and the Commissioner filed a reply [DE-24]. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

### I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on October 1, 2010, alleging disability beginning September 1, 2004. (R. 14, 92-93, 137-143). Both claims

were denied initially, and Claimant's DIB claim was denied upon reconsideration. (R. 12, 92-94). A hearing before the Administrative Law Judge ("ALJ") was held on August 9, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 795-820). At the hearing, Claimant's counsel moved to amend the alleged onset date to February 12, 2011 (R. 818-19), which the ALJ subsequently allowed in his decision (R. 14). On September 5, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 11-24). The ALJ determined that due to amendment of the alleged onset date, Claimant was not entitled to a period of disability or DIB under Title II and dismissed those claims. (R. 14). Therefore, the ALJ's decision addressed only Claimant's application for SSI. *Id.* On January 24, 2013, the Appeals Council denied Claimant's request for review. (R. 6-9). Claimant then filed a complaint in this court, seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial

2

evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to

3

incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges (1) the ALJ erred in assessing the medical opinion evidence; (2) the ALJ did not meaningfully consider a favorable Medicaid decision; and (3) new and material evidence warrants remand. Pl.'s Mem. [DE-16] at 7-11; Pl.'s Resp. [DE-22] at 1-2.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 16-24). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the application date. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: fracture of lower extremity, osteoarthritis, degenerative disc disease, cirrhosis, hepatitis C, obesity, hypertension, anxiety, and depression. (R. 17). At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with additional limitations (i.e., occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders and scaffolds; occasional exposure to

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

unprotected heights, moving mechanical parts, extreme cold, and extreme heat; only perform simple, routine, and repetitive tasks; no work at a production rate pace (e.g., assembly line work), but can perform goal oriented work (e.g., office cleaner); and frequent interaction with supervisors, co-workers, and the general public). (R. 19-22). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 19).

At step four, the ALJ concluded that Claimant could not perform the requirements of his past relevant work. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23-24). Accordingly, the ALJ determined Claimant has not been disabled at any time since the date of application, October 1, 2010. (R. 24).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of the administrative hearing, Claimant was 51 years old and living with his wife. (R. 799). Claimant worked as carpenter framing houses for his entire career, from the time he was 16 years old until 2010 when he broke his leg. (R. 799-800). Claimant's leg did not heal properly, despite a surgical rod placement. (R. 800-01). Claimant experiences constant pain in his leg and requires pain medication in the morning before getting off the couch. (R. 801). Claimant's leg can bear some weight, but not for long, and he experiences shooting pain if he stands on it much. *Id.* Claimant experiences swelling in his leg at times depending on his activity level (e.g., walking to the mailbox or around the yard causes his leg to swell), and he elevates his leg for relief. *Id.* Claimant utilizes a cane if he has to walk more than approximately 300 to 500 yards, but can ambulate effectively in his home without the cane. (R. 802). Claimant's doctor offered a second

corrective leg surgery, but indicated amputation of the leg was a potential risk, and Claimant declined the surgery. (R. 808-09).

In addition to Claimant's leg problem, he has experienced pain in his back for years due to degenerative discs. *Id.* Claimant's back hurts constantly, and he has a pain management doctor who controls his pain with medication. *Id.* Claimant was uncertain as to whether his mediation caused any side effects. (R. 806). Claimant rated his pain as four to five out of ten with medication and seven to eight out of ten without medication. (R. 803). The medication relieves the pain for short periods of time, and lying down also helps at times. (R. 802-03). Claimant is unable to lie down or stand for long periods and must change positions and stretch his back frequently. (R. 803). Claimant can stand for approximately 30 minutes before needing to sit down. (R. 806). Claimant also tires and experiences shortness of breath if he walks too far or stands for too long. (R. 804-05). Claimant has arthritis in his right hip and a torn rotator cuff in his right shoulder. (R. 803-04). He can lift his arm above his head, but cannot maintain the position for long due to pain in the shoulder. (R. 804). Claimant can lift up to ten pounds, but not as much as thirty pounds, and he has problems balancing when he lifts. (R. 807). Claimant cannot bend, kneel or squat due to his leg problems. (R. 808). Claimant has hepatitis C and cirrhosis of the liver, which make him weak but, otherwise, do not affect him physically. (R. 804). Claimant was recently diagnosed with congestive heart failure and sometimes experiences chest pain, but has difficulty attributing his pain to one condition or another. (R. 804-05).

On an average day, Claimant sometimes rides to the store, watches television, and gets out in his yard as much as possible. (R. 809). Claimant has not driven in three or four years, and his wife drove him to the hearing. (R. 799). Claimant accompanies his wife to the store to pick up a

few items, but does not do the grocery shopping and typically stands and waits or browses in the meat department while waiting for her to return. (R. 809-10). Claimant's wife assists him with showering by washing his legs and feet, because he cannot bend down. (R. 810). Claimant does some limited cleaning, such as washing a few dishes, and some cooking, such as pealing potatoes, but has to rest after 15-20 minutes. (R. 810-11). Claimant sometimes takes an hour and a half nap in the evening, because he cannot stay awake. (R. 805).

## C.  VE's Testimony at the Administrative Hearing

Roselle Renee Evans testified as a VE at the administrative hearing. (R. 812-17). After the VE's testimony regarding Claimant's past work experience (R. 812-13), the ALJ posed the following hypothetical question:

> [A]ssume a hypothetical individual of the same age, education, and past relevant work experience as the claimant, who possesses the following residual functional capacity: that he is limited to the light range of exertional activity with the following, well, conditions: He can only occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crawl, crouch. He would need to avoid unprotected heights -- I'm sorry. He may have only occasional exposure to unprotected heights and moving mechanical parts. He can have only occasional contact with extreme cold or extreme heat; and he needed to, he needs to avoid concentrated exposure to gas, dusts, poor ventilation, et cetera; limited to simple tasks; limited to routine and repetitive tasks; not able to perform at a production rate pace, but could perform at a goal-oriented pace; that he can frequently, but not constantly, interact with supervisors, coworkers, and the general public. When an individual with that -- can the hypothetical individual, I need to say, perform any of the past jobs that you have described?

(R. 813). The VE responded that such an individual could not perform Claimant's past job, but could perform other jobs, such as marker (DOT # 209.587-034), mail clerk (DOT # 209.687-026), and router (DOT # 222.587-038), all of which are light exertion level positions. (R. 814). The ALJ next asked the VE to consider the same hypothetical individual with the additional limitations of

7

utilizing "a handheld assistive device for prolonged ambulation, walking on uneven terrain, or ascending and descending slopes" and never performing duties that require bending. *Id.* The VE opined that an individual so limited would not be precluded from the aforementioned jobs and could utilize a handheld device if able to lean up against something. *Id.* Finally, the ALJ added a third limitation that the hypothetical individual is unable to sustain an eight-hour workday for a 40-hour workweek. (R. 815). The VE opined that no jobs would be available to an individual so limited. *Id.*

Counsel for Claimant asked the VE whether the jobs of marker, mail clerk, and router could be performed by a person who cannot bend, to which the VE responded that, according to the DOT, those jobs are not identified as generally requiring bending on a regular and consistent basis or even on an occasional basis. (R. 815). The VE also clarified that a mail clerk is a mail sorting position. (R. 816). Counsel then posed the following hypothetical to the VE:

> If we assume a person who could only stand for 15 minutes at a time, walk for 10 minutes at a time, can do no bending or squatting, can lift no more than 10 pounds, and can only stand for a total of one hour during an eight-hour workday, are there any jobs that individual can perform?

(R. 817). The VE responded in the negative. *Id.* The VE also opined that a limitation that the individual must frequently elevate the leg at waist-high level throughout the day would most likely preclude the aforementioned jobs. *Id.*

## V. DISCUSSION

### A. ALJ's Assessment of Medical Opinion Evidence

Claimant contends the ALJ erred by accepting the opinion of a non-examining physician, Dr. Jagjit Sandhu, over that of Claimant's treating orthopedist, Dr. William Silver. Pl.'s Mem. at 7-10. The Commissioner counters that the ALJ appropriately discounted Dr. Silver's opinion, because it

8

was inconsistent with Claimant's medical records. Def.'s Mem. at 10-15.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.* If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

Here, the ALJ discussed Dr. Silver's opinion, assigning it little weight, and assigned some weight to Dr. Sandhu's opinion:

> In February 2012, Dr. William Silver completed a Medical Source Statement indicating that the claimant's left ankle fracture limited him to standing for 1 hour, sitting [at one time] for 4 hours, and sitting for 8 hours during an 8-hour workday. Dr. Silver opined that the claimant could lift up to 10 pounds. However, Dr. Silver also indicated that the claimant could not work any hours during the day (Ex. 19F).
> . . . .

9

> [T]he undersigned assigns some weight to the physical assessment of State agency medical consultant, Dr. Jagjit Sandhu, because it is generally consistent with the evidence as a whole. However, the undersigned assigned additional postural limitations due to the claimant's limited range of motion in his back. The undersigned did not find sufficient evidence to necessitate additional limitations regarding the claimant's ability to push with his lower extremities or any manipulative limitations because he exhibited good motor strength in his extremities during a 2012 appointment (Ex. 14F). Dr. Silver's opinion is assigned little weight because it is inconsistent with the objective evidence of record, which shows the claimant was fairly stable in terms of pain management. Moreover, his physical examination in 2012 revealed good motor strength in his lower extremities and he had good hip motion.

(R. 20, 22).

The ALJ appropriately considered Dr. Silver's opinion and sufficiently explained why he assigned it little weight. Claimant is correct that the treatment notes from his February 2012 visits with Dr. Wilson and Dr. Silver at Triangle Orthopaedic Associates indicate that he was having "progressive breakthrough pain," had increased his pain medication while trying to "maintain an active life," and that Claimant's pain "increases with weightbearing." (R. 536-41). However, the ALJ explained that the limitations noted in Dr. Silver's February 21, 2012 opinion were inconsistent with subsequent treatment notes from 2012, which indicate that Claimant was "fairly stable in terms of pain management." (R. 22); *see* (R. 394) (treatment note from Claimant's June 1, 2012 visit with Dr. Wilson stating Claimant had "continued diffuse pain problems," but was "doing better with use of his pain medications" and "[f]airly stable as reported by both patient and wife"); (R. 620) (treatment note from Claimant's May 10, 2012 visit with Dr. Wilson stating Claimant "had previously been fairly stable on his medication regimen for his chronic pain"). The court's duty is to determine if substantial evidence supports the ALJ's conclusion, not to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the

10

[Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hayes v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Furthermore, contrary to Claimant's suggestion that the ALJ accepted the consultative opinion of Dr. Sandhu over that of Dr. Silver, the ALJ expressly stated that he gave Dr. Sandhu's opinion only "some weight" and assigned "additional postural limitations due to the claimant's limited range of motion in his back." (R. 22). The ALJ considered and explained the weight given to Dr. Sandhu's opinion, as the ALJ was required to do, 20 C.F.R. § 404.1527(e)(2)(H), and the implication that the ALJ improperly elevated Dr. Sandhu's opinion over that of Dr. Silver is unsupported. Thus, the ALJ's assessment of the medical opinion evidence was in accordance with the law and supported by substantial evidence.

## B. ALJ's consideration of the Medicaid Decision

Claimant contends that the ALJ failed to meaningfully discuss and weigh a favorable North Carolina Department of Health and Human Services ("NCDHHS") Medicaid decision. Pl.'s Mem. at 10-11. The Commissioner contends that the ALJ explicitly considered the Medicaid decision and explained how the evidence supported a contrary conclusion. Def.'s Mem. at 15-17.

The regulations governing the Social Security Administration's ("SSA") disability determinations provide as follows:

> A decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency . . . that you are disabled . . . is not binding on us.

20 C.F.R. § 416.904. Nevertheless, another governmental agency's decision that a claimant is disabled is "evidence" that must be considered by the SSA. *See* 20 C.F.R. § 416.912(b)(5); SSR 06-03p, 2006 WL 2329939, at *6-7 (Aug. 9, 2006). Moreover, "the adjudicator should explain the

11

consideration given to these decisions in the notice of decision . . . ." SSR 06-03p, 2006 WL 2329939, at *7; *see, e.g., Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *4 (E.D.N.C. Nov. 5, 2010) ("Decisions by other agencies as to the disability status of a Social Security applicant are considered so probative that the ALJ is required to examine them in determining an applicant's eligibility for benefits.").

Applying the same regulations governing SSA determinations, the NCDHHS determined that Claimant was limited to performing sedentary work, which resulted in a directed finding of disabled. (R. 792-94). The ALJ stated as follows with respect to the Medicaid decision:

> The record indicates that the claimant was approved for Medicaid benefits effective March 2011 (Ex. 24F). The undersigned has taken this into consideration amongst the other evidence of record. However, Regulations 20 CFR 404.1504 and 416.904 state that a determination of disability by another government agency is not binding on the Social Security Administration.

(R. 21). The ALJ then went on to explain his finding that Claimant maintained the RFC for light work. (R. 21-22). The Commissioner urges that the ALJ's statement regarding the Medicaid decision, when considered in light of the ALJ's subsequent RFC analysis, complies with SSR 06-03p. However, this court has previously found the same cursory discussion to be deficient. *See Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 WL 1803619, at *10 (E.D.N.C. Apr. 21, 2008) (adopting memorandum and recommendation) (remanding case where ALJ noted Claimant's eligibility to receive Medicaid assistance, but failed to explain–other than stating the determination was not binding–why it was given no weight). Here, the ALJ acknowledged the Medicaid decision and stated that it was considered, but dismissed the decision in a conclusory fashion by simply stating the decision is not binding on SSA. (R. 21). This fails to satisfy the requirement of SSR 06-03p, which requires the ALJ to "*explain* the consideration given." SSR 06-03p, 2006 WL 2329939,

at *7 (emphasis added).

Moreover, the court cannot conclude, as the Commissioner urges, that the ALJ's real reason for dismissing the Medicaid decision can be found in the subsequent RFC discussion, which provides no clear insight into the ALJ's consideration of the Medicaid decision. For example, the subsequent RFC discussion fails to address one of the principal bases upon which the Medicaid finding was premised: namely, that Claimant "developed problems with cellulitis of the leg since his surgery," including "edema 1+ pitting from his ankle to mid calf bilaterally." (R. 21-22, 793). The fact that the ALJ explained his determination that Claimant was capable of light work does not necessarily mean that the ALJ adequately considered the Medicaid decision in making that determination, and the ALJ's clearly stated reason–that the Medicaid determination is not binding–is insufficient. Accordingly, the ALJ failed to "'provide sufficient articulation for his reasons for [dismissing the Medicaid decision] so to allow for a meaningful review by the courts,'" *Taylor v. Astrue*, No. 7:10-CV-149-FL, 2011 WL 2669290, at *5 (E.D.N.C. July 7, 2011), and it is recommended that the case be remanded for the ALJ to fully explain the consideration given to the Medicaid decision.

## C.    New and Material Evidence

Finally, in response to Defendant's motion, Claimant raised a new ground for relief, asserting that new and material evidence in the form of a favorable subsequent decision awarding SSI to Claimant on July 30, 2013, warrants remand. Pl.'s Resp. at 1-2. The Commissioner responded that this new evidence is not material and, thus, may not serve as grounds for a § 405(g) sentence-six remand. Def.'s Reply [DE-24] at 1-5.

When a claimant submits evidence that has not been presented to the ALJ, the court may

13

consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). Under sentence six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

"Courts in this district have recognized that a subsequent finding of disability can constitute new and material evidence that could change the outcome of the first decision, reasoning that a subsequent finding of disability 'based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome of the claim.'" *Bryant v. Astrue*, No. 7:11-CV-00054-D, 2012 WL 895425, at *7 (E.D.N.C. Feb. 10, 2012) (citations omitted), *adopted by* 2012 WL 896147 (E.D.N.C. Mar. 15, 2012). This court has also acknowledged the Fourth Circuit's footnote in the unreported per curiam decision of *Baker v. Comm'r of Soc. Sec.*, No. 12-1709, 2013 WL 1866936, at *1 n.* (4th Cir. May 6, 2013), which states "'[a] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g).'" *Pulley v. Colvin*, No. 4:11-CV-85-FL, 2013 WL 2356124, at *5 (E.D.N.C. May 29, 2013) (quoting *Baker*, 2013 WL 1866936, at *1 n.*) (quoting *Allen v. Comm'r*

14

*of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009)). However, this court in *Pulley* declined to follow *Baker* as inconsistent with the Fourth Circuit's decision in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012). *Pulley*, 2013 WL 2356124, at *2 ("[I]f a subsequent decision by another agency is evidence, then it follows that a subsequent decision by the Social Security Administration itself also is evidence.").

Here, Claimant asserts that he "reapplied for SSI shortly after the Appeals Council denied his request for review in the present case earlier this year" and was approved for SSI on July 30, 2013, providing a letter from the Social Security Administration of the same date notifying Claimant of the approval [DE-23]. The ALJ's decision in the present case adjudicated Claimant's disability status for the period from October 1, 2010, through September 5, 2012. (R. 25). Based on the information provided by Claimant, it is unclear what period the subsequent finding of disability covered and, thus, the court cannot determine whether the subsequent decision is, in fact, material. *See Blackwell v. Colvin*, No. 5:12-CV-651-FL, 2013 WL 5739097, at *5 (E.D.N.C. Oct. 22, 2013) (adopting memorandum and recommendation) ("Remand has been found by this court to be warranted when there is little or no intervening gap between a denial of disability and a finding of disability.") (citing *Smith v. Astrue*, No. 5:10-CV-219-FL, 2011 WL 3905509, at *3 (E.D.N.C. Sept. 2, 2011)). While Claimant asserts in his response that his counsel "repeatedly tried to obtain a copy of the decision rationale for his second claim, but Defendant has not been forthcoming with this information," Pl.'s Resp. at 1, counsel for the Commissioner responded that he was not made aware of the alleged difficulties obtaining documentation nor contacted directly, Def.'s Reply at 2-3 n.1. Moreover, Claimant fails to specify what efforts were made (e.g., issuance of a subpoena) and sought no assistance from the court to obtain the necessary documentation. Thus, Claimant has failed to

meet his "'burden of showing that evidence relied upon in reaching the favorable decision pertains to the period under consideration in this appeal.'" *Woodall v. Colvin*, No. 5:12-CV-357-D, 2013 WL 4068142, at *6 (E.D.N.C. Aug. 12, 2013) (quoting *Baker*, 2013 WL 1866936, at *1 n.*). Accordingly, under these facts and circumstances, the subsequent favorable decision does not warrant a sentence-six remand.[2]

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-15] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-20] be DENIED, and the case be remanded to the Commissioner for proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 16th day of June 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

---

[2] Although not an independent basis for remand, as a practical matter, to the extent the case is remanded for further consideration of the Medicaid decision, consistent with the recommendation herein, the Commissioner may wish to consider the subsequent favorable decision to ensure it should not alter the prior unfavorable decision.

16